**BEUS GILBERT MCGRODER PLLC**
ATTORNEYS AT LAW
701 NORTH 44TH STREET
PHOENIX, ARIZONA  85008-6504
TELEPHONE (480) 429-3000

Patrick J. McGroder III (002598)
Caroline McGroder (030418)
Alex Morris (035239)
p3@beusgilbert.com
cmcgroder@beusgilbert.com
amorris@beusgilbert.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Lynn M. Bunch, an individual, | Case No.: |
| Plaintiff, | **VERIFIED COMPLAINT** |
| v. | |
| National Association of Preferred Providers, a Texas not-for-profit organization; Triada Assurance Holdings, LLC, a Texas limited liability company dba Salvasen Health; Salvasen Health Holdings, LLC, a Texas limited liability company dba Salvasen Health; Salvasen United Association, Inc., a Texas corporation, dba Salvasen Health; Blackhawk Claims Service GA, Inc., a Georgia corporation; National Individual Insurance Agency, LLC, a Texas limited liability company; Association Health Care Management, Inc., a Texas corporation; Barry Jay Glenn, individually, and as an officer and/or governing person of Triada Assurance Holdings, LLC, Salvasen Health Holdings, LLC, and Salvasen United | |

Association, Inc.; Harold L. Brock, Jr., aka "Rusty" Brock, individually, and as a managing member of National Individual Insurance Agency, LLC; Jacob Brock, individually, and as a director of Blackhawk Claim Services GA, Inc., and as an officer of Association Health Care Management, Inc.; Landon Jordan, individually and as president of Association Health Care Management, Inc., and as owner of National Individual Insurance Agency, LLC; Rami Hassan, individually, and as president of National Association of Preferred Providers, and as an officer of Association Health Care Management, Inc.; and Roy Franklin Anding, Jr., individually, and as an executive and as an officer of Blackhawk Claims Services GA, Inc.; John Does I-X; Jane Does I-X; ABC Business Entities I-X; Black Corporations I-X,

Defendants.

Plaintiff Lynn M. Bunch, by and through undersigned counsel, hereby alleges as follows:

## **INTRODUCTION**

1.      This case is about Lynn Bunch, a woman who was simply trying to buy an Affordable Care Act-compliant health insurance policy, who was deliberately defrauded by Barry Jay Glenn, Harold L. Brock, Jr. (aka Rusty Brock), Jacob Brock, Landon Jordan, Rami Hassan, their associates, and their companies.

2.      The Defendants conned Lynn (and thousands like her) under the guise of providing health insurance that would be there if and when tragedy or illness struck.

3.      For years, the Defendants collected "premiums" without any intention of paying on the policies.

## **PARTIES**

4.      At all times relevant, Plaintiff Lynn M. Bunch was and is a resident of Maricopa County in the State of Arizona.

5.      At all times relevant, Defendant National Association of Preferred Providers was and is a Texas non-profit organization with a principal place of business in Houston, Texas.

6.      At all times relevant, Defendant Triada Assurance Holdings, LLC was and is a Texas limited liability company, with a principal place of business in Houston, Texas.  Upon information and belief, Defendant Triada Assurance Holdings does not have any members that are citizens of Arizona.  At times, Defendant Triada Assurance Holdings did business as "Salvasen Health."

7.      At all relevant times, Defendant Salvasen Health Holdings, LLC dba Salvasen Health was and is a Texas limited liability company, with a principal place of business in Houston, Texas.  Upon information and belief, Defendant Salvasen Health Holdings does not have any members that are citizens of Arizona.

8.      At all relevant times, Defendant Salvasen United Association, Inc. dba Salvasen Health was and is a Texas corporation, with a principal place of business in Houston, Texas.

9.      At all relevant times, Defendant Blackhawk Claims Service GA, Inc. was and is a Georgia corporation, with a principal place of business in Irving, Texas.

10.     At all relevant times, Defendant National Individual Insurance Agency, LLC was and is a Texas limited liability company, with a principal place of business in Mansfield, Texas.  Upon information and belief, Defendant National Individual Insurance Agency does not have any members that are citizens of Arizona.

11.     At all relevant times, Defendant Association Health Care Management, Inc. was and is a Texas corporation, with a principal place of business in Houston, Texas.

12.     At all relevant times, Defendant Barry Jay Glenn, was and is a resident of the State of Texas.  Defendant Glenn currently resides in Montgomery County, Texas.

13.     At all relevant times, Defendant Harold L. Brock, Jr., aka "Rusty" Brock, was and is a resident of the State of Texas.

14.     At all relevant times, Defendant Jacob Brock was and is a resident of the State of Texas.  Defendant Jacob Brock is the son of Defendant Harold L. Brock.

15.     At all relevant times, Defendant Landon Jordan was and is a resident of the State of Texas.

16.     At all relevant times, Defendant Rami Hassan was and is a resident of the State of Texas.

17.     At all relevant times, Defendant Roy Franklin Anding, Jr., was and is a resident of the State of Texas.

18.     Defendants John Does I-X, Jane Does I-X, ABC Business Entities I-X, and Black Corporations I-X, inclusive, are individuals, corporations, partnerships, and/or business entities which may be agents, servants, and employees of Defendants who participated in the conduct alleged herein and who may therefore be liable for the damages alleged to have been suffered by Plaintiff.  The specific names or identities of said Defendants are at present unknown; however, when they become known, Plaintiff will seek leave to amend this Complaint to specifically name or identify them.

19.     Plaintiff is informed and believes Defendants, including the fictitiously named defendants, were the agents, servants, employees, representatives of each of the remaining defendants and were at all times material hereto acting within the authorized course and scope

of said agency, service, employment and/or representation, and/or that all of said acts, conduct and omissions were subsequently ratified by their respective principals and the benefits thereof accepted by such principals.

20.    At all times mentioned herein, Defendants were and are engaged in the marketing, sale, and administration of healthcare insurance plans.

21.    Defendants National Association of Preferred Providers; Triada Assurance Holdings, LLC; Salvasen Health Holdings, LLC; Salvasen United Association, Inc.; Blackhawk Claims Service GA, Inc.; National Individual Insurance Agency, LLC; and Association Health Care Management, Inc. will, at times, be referred to collectively in this Complaint as the "Entity Defendants."

22.    Defendants Barry Jay Glenn; Harold L. Brock, Jr.; Jacob Brock; Landon Jordan; Rami Hassan; and Roy Franklin Anding, Jr. will, at times, be referred to collectively in this Complaint as the "Individual Defendants."

23.    All Defendants caused injuries to occur out of which the following causes of action arise.

## JURISDICTION & VENUE

24.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States; 28 U.S.C. § 1332, because the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000; and 18 U.S.C. § 1964(c), because Plaintiff asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.  Plaintiff is also bringing, in the alternative, a claim under the Employee Retirement Income Security Act of 1974, pursuant to 29 U.S.C. § 1132(a)(1)(B).

25.     This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367, because these claims are substantially related to Plaintiff's claims under federal law.

26.     Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

27.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims occurred in the District of Arizona. Furthermore, venue over Plaintiff's RICO claims is proper under 18 U.S.C. § 1965(a), as the lead Defendant (National Association of Preferred Priorities) has an agent and transacts its affairs in the District of Arizona.

## FACTUAL BACKGROUND

### Criminal Enterprise

28.     Over a period of years, the Defendants have operated a large and complex enterprise with a similar goal:  to enrich themselves by systematically defrauding innocent consumers trying to obtain healthcare insurance.

29.     Defendants' association-in-fact enterprise include an array of limited liability companies, corporations, and even a non-profit entity.

30.     These entities purportedly include insurance companies; insurance agencies; claims processors and administrators; third-party administrators; fulfillment service providers; and third-party call centers.

31.     Defendants' association-in-fact enterprise (referred to herein as the "Glenn Organization") was operated, directed, and controlled by Barry Jay Glenn, Harold L. Brock, Jr. (aka Rusty Brock), Jacob Brock, Landon Jordan, Rami Hassan, and Roy Franklin Anding, Jr. (collectively the "Individual Defendants").

32.     Upon information and belief, Defendant Barry Jay Glenn is the leader of the criminal enterprise.

33.     At all relevant times, Defendant Glenn did not have a license to engage in the business of insurance.  Defendant Glenn was issued Texas Insurance Agent License No. 1391612 on June 6, 2006, and the license expired on August 31, 2018.  Defendant Glenn did not renew his license.

34.     Upon information and belief, Defendant Glenn has a history of committing financial crimes.

35.     Upon information and belief, Defendant Glenn was taken into custody by the Lubbock County Sheriff's Office in Lubbock, Texas, on December 10, 1982, and was ultimately convicted of the offense of Issuing a Bad Check.

36.     Upon information and belief, Defendant Glenn was taken into custody by the Randall County Sheriff's Office in Canyon, Texas, on April 7, 1989, and was ultimately convicted of the offense of Theft by Check.

37.     Defendants were aware that consumers would pay premiums, only to have the various Members of the Glenn Organization deny the consumers' claims or otherwise refuse to pay for medical services.

38.     At all times relevant to this Complaint, the Glenn Organization was an association-in-fact within the meaning of 18 U.S.C. § 1961(4), comprised of a network of companies and associates that shared a common purpose of defrauding innocent consumers by charging those consumers premiums for insurance from unregistered insurance companies, with no intention of ever paying for care that was covered.

39.     The Glenn Organization was, and is, made up of a network of companies and individuals that carried out the scheme under Defendants' direction and control.

40.     Known members of the Glenn Organization include the following:

a)      National Association of Preferred Providers;

b)      Triada Assurance Holdings, LLC;

c)      Salvasen Health Holdings, LLC;

d)      Salvasen United Association, Inc.;

e)      Blackhawk Claims Services GA, Inc.;

f)      National Individual Insurance Agency, LLC;

g)      Association Health Care Management, Inc.;

h)      Barry Jay Glenn;

i)      Harold L. Brock, Jr. (aka Rusty Brock);

j)      Jacob Brock;

k)      Landon Jordan;

l)      Rami Hassan; and

m)      Roy Franklin Anding, Jr.

41.     The identities of other members of the Glenn Association are currently unknown but are expected to be identified through the discovery process.

42.     The members of the Glenn Organization do not share common ownership, nor are they all wholly owned, directly or indirectly, by Defendants.  Nonetheless, at all relevant times, the Glenn Organization was, and is, directed and controlled by Defendants.

43.     Defendants approved, authorized, and/or either specifically or tacitly directed, ratified, or participated in the acts of the Glenn Organization detailed in this Complaint.

44.     Upon information and belief, Barry Glenn, Harold "Rusty" Brock, Landon Jordan, and Rami Hassan held senior executive or management positions at, or otherwise exercised control over, entities included in or associated with the Glenn Organization.

45.     The Individual Defendants hold or have held a variety of positions with the Entity Defendants.   The chart below illustrates the interconnections between the Entity Defendants on the one hand and the Individual Defendants on the other hand:



46.     Barry Jay Glenn is the Governing Person of Triada Assurance Holdings, LLC.

47.     Barry Jay Glenn is the Manager of Salvasen Health Holdings, LLC.

48.     Barry Jay Glenn is the President and Director of Salvasen United Association, Inc.

49.     Harold L Brock, Jr., aka "Rusty" Brock is the Managing Member of National Individual Insurance Agency, LLC.

50.     Jacob Brock is the son of Harold L. Brock, Jr.

51.     Jacob Brock is a Director of Blackhawk Claims Services GA, Inc.

52.     Jacob Brock is the Secretary of Association Health Care Management, Inc.

53.     Landon Jordan is the Owner of National Individual Insurance Agency, LLC.

54.     Landon Jordan is the President of Association Health Care Management, Inc.

55.     Rami Hassan is the President of National Association of Preferred Providers.

56.     Rami Hassan is the Treasurer of Association Health Care Management, Inc.

57.     Roy Franklin Anding, Jr. is the Chief Executive Officer of Blackhawk Claims Services GA, Inc.

58.     Roy Franklin Anding, Jr. is the Chief Financial Officer of Blackhawk Claims Services GA, Inc.

59.     Roy Franklin Anding, Jr. is the Secretary of Blackhawk Claims Services GA, Inc.

60.     Tammy Brown is not a party to this action, but her current and past affiliations demonstrate the connections between the Entity Defendants.

61.     Tammy Brown previously served as a Director of National Association of Preferred Providers.

62.     Tammy Brown currently serves as Director of Blackhawk Claims Services GA, Inc.

63.     Trinity HealthPlan Administrators, LLC is not a party to this action, but was a Texas limited liability company.

64.     Trinity HealthPlan Administrators, LLC is no longer an active entity and has been administratively closed by the Texas authorities.

65.     The principal of Trinity HealthPlan Administrators, LLC was Barry Jay Glenn.

66.     When it was in existence, Trinity HealthPlan Administrators, LLC, at times, used the "Salvasen.com" domain name, and the email address: claims@salvasen.com.

67.     Trinity HealthPlan Administrators, LLC is not named as a defendant, because it is no longer in existence.

68.     Many of the Defendants operate out of a limited number of office buildings, reflecting coordination and potentially the sharing of resources.  The chart below illustrates four of the most significant properties used by certain Defendants:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**11111 Richmond Avenue**
**Houston, TX 77082**

- National Association of Preferred Providers (Suite 250)
- Blackhawk Claims Service GA, Inc. (Suite 215) *(As reflected in Plaintiff's Explanation of Benefit)*
- Association Health Care Management, Inc. (Suite 200)



**1900 Matlock Road**
**Mansfield, TX 76063**

- National Individual Insurance Agency, LLC (Suite 205)
- Address Listed for National Association of Preferred Providers President, Rami Hassan on file with Texas Comptroller of Public Accounts Records (Suite 500)
- Business Address for Jacob Brock, Landon Jordan, and Harold L. Brock Jr. on file with Texas Department of Insurance (Suite 500 for all)



**3000 Weslayan Street**
**Suite 300**
**Houston, TX 77027**

- Business Address of Murrah & Killough PLLC
- Business address on file with Texas Secretary of State for:
  - Triada Assurance Holdings, LLC
  - Salvasen Health Holdings, LLC
- Address for Statutory Agent of:
  - Salvasen United Association, Inc. (Murrah & Killough PLLC)
  - Triada Assurance Holdings, LLC (Christopher Mark Murrah)
  - Salvasen Health Holdings, LLC (Murrah & Killough PLLC)



**10713 West Sam Houston Parkway North**
**Suite 106**
**Houston, TX 77027**

- Address listed by Texas Department of Insurance for:
  - Salvasen Health Holdings, LLC
  - Salvasen United Association, Inc.
  - Triada Assurance Holdings, LLC
- Business Address on file with Texas Secretary of State for Salvesen United Association, Inc.
- Address Listed for:
  - Triada Assurance Holdings, LLC (governing person, Barry Glenn)
  - Salvesen Health Holdings, LLC (Manager, Barry Glenn)

69.     Multiple Defendants have connections to 11111 Richmond Avenue, Houston, Texas, including being the business address of National Association of Preferred Providers (Suite 250); Blackhawk Claims Service GA, Inc. (Suite 215); and Association Health Care Management, Inc. (Suite 200).

70.     Multiple Defendants have connections to 1900 Matlock Road, Mansfield, Texas, including being the business address of National Individual Insurance Agency, LLC (Suite 205); the address for National Association of Preferred Providers President Rami Hassan that is on file with the Texas Comptroller of Public Accounts (Suite 500); as well as being the business address (Suite 500) on file with the Texas Department of Insurance for Jacob Brock, Harold L. Brock, Jr., and Landon Jordan.

71.     Multiple Defendants have connections to 3000 Weslayan Street, Suite 300, Houston, Texas, including being the business address on file with the Texas Secretary of State for Triada Assurance Holdings, LLC, and Salvasen Health Holdings, LLC; and being the address for the statutory agent of Salvasen United Association, Inc., Triada Assurance Holdings, LLC; and Salvasen Health Holdings, LLC.

72.     Multiple Defendants have connections to 10713 West Sam Houston Parkway North, Suite 106, Houston, Texas, including being the business address of Salvasen Health Holdings, LLC; Salvasen United Association, Inc.; and Triada Assurance Holdings, LLC.

### The Scheme

73.     For a period of over two years, Defendants operated a fraudulent scheme and a pattern of racketeering related to the sale of fraudulent health insurance coverage to consumers.

74.     Defendants marketed health insurance under the name Salvasen Health through a variety of call center operators, administrators, brokers, and other intermediaries.

75.     Defendants fraudulently marketed their services as comprehensive health insurance that complied with the Affordable Care Act.  In reality, however, Defendants were marketing limited healthcare plans.

76.     Defendants repeatedly made false and misleading statements to consumers.

77.     Upon information and belief, consumers were brought into the scheme through websites that appear to be the official state medical insurance exchange under the Affordable Care Act.

78.     Upon information and belief, participants in the scheme paid search engine companies advertising fees to be placed higher on the search result page.

79.     The website provided information that mirrors official websites affiliated with state insurance marketplaces under the Affordable Care Act.

80.     The lookalike website would prompt the consumer to make a phone call to a listed telephone number for the National Association of Preferred Providers.

81.     Upon information and belief, the telephone number would be answered at a call center was operated by National Independent Insurance Agency on behalf of National Association of Preferred Providers.

82.     The telephone salesperson would pitch "Salvasen Health" plans and take payment information over the telephone.

83.     "Salvasen Health" was operated by Triada Assurance Holdings, LLC, Salvasen Health Holdings, LLC, and Salvasen United Association, Inc.

84.     During the telephone call, the consumer would be enrolled in membership in the National Association of Preferred Providers with "Salvasen Health" insurance as an administrator for certain plans.

85. The consumer would eventually be issued insurance cards, and claims would be processed by third-party administrators, including Blackhawk Claims Service GA, Inc., Association Health Care Management, Inc., and Trinity Health Administrators, LLC.

86. Given the inherent delays in medical insurance billing, it would take months before consumers would learn that the coverage they had purchased was worthless. In the meantime, Defendants had been collecting payment without providing any benefits.

87. When covered consumers sought medical care, their providers received pre-authorization for medical procedures. Consumers would only learn later that Defendants had no intention to pay for covered care.

88. Innocent consumers have been saddled with significant medical debt, due to Defendants' fraud.

89. After learning the truth about Salvasen Health, innocent consumers reported certain Defendants to their respective state insurance regulators.

90. When insurance regulators investigated, they learned that certain Defendants were selling insurance without authorization and licensure and that Defendants had engaged in deceptive practices.

91. Certain Defendants voluntarily agreed to administrative cease and desist orders, payment of forfeitures and orders to not operate in certain states, or to leave the insurance industry altogether.

92. Beginning by at least 2020, and continuing through at least May 31, 2021, Defendants solicited and sold health insurance policies and certificates of coverage to approximately 65,000 consumers nationwide.

93. In late 2021, Defendants disclosed to state insurance regulators that they had almost 39,000 active policyholders paying $23.9 million in premiums during 2021.

94.     As an active policyholder during this time, Plaintiff unwittingly contributed to the $23.9 million in premiums collected by unlicensed Defendants.

95.     The scheme resulted in windfall amounts of revenue being collected, while few claims were ever paid in full, if paid at all.  The scheme to sell coverage under "Salvasen Health" resulted in significant revenue.

96.     Defendant Glenn has appeared to benefit significantly from his participation in the scheme. Defendant Glenn's personal financial profile appears to have improved in the years since the scheme began.

97.     On April 10, 2017, two federal tax liens were filed against Defendant Glenn, one in the amount of $21,445 and the other in the amount of $43,625.

98.     On March 16, 2020, the U.S. Internal Revenue Service filed a federal tax lien with the Harris County, Clerk's Office in Houston, Texas, against Defendant Glenn and his wife, Joanna L. Glenn.  The tax lien (I.R.S. Serial No. 411883120) was entered in the amount of $63,133, and was recorded in Volume RP2020, Page 118574 of the Harris County Clerk's Office.

99.     At the time the federal tax lien was filed, Defendant Glenn's residence in Spring, Texas was a five-bedroom, 4.5 bath, 3,967 square foot home.  The home that was encumbered by the lien has a 2023 value of approximately $525,000.

100.    Defendant Glenn sold his home in Spring, Texas on or about October 21, 2021.

101.    Defendant Glenn purchased his current residence located in the Grand Harbor gated community in Montgomery, Texas, on or about May 17, 2021. The home has a 2023 value of approximately $1,350,000.  Defendant Glenn's new home is 5,135 square feet and has 5 bedrooms and 6 bathrooms.  Defendant Glenn's new home is on a one-half acre, waterfront lot adjacent to Lake Conroe and features a private boat dock.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

102.   All Defendants, including Individual Defendants and Entity Defendants, have benefitted monetarily from the scheme, just as Defendant Glenn has.

### Lynn Bunch is Defrauded and Left Without Insurance Coverage While Battling Cancer

103.   On April 20, 2021, Plaintiff conducted an online search for a healthcare plan in the Affordable Care Act Health Insurance Marketplace.  Plaintiff believed her search led her to a government marketplace website.

104.   Plaintiff had conducted an internet search using the search terms "Arizona health insurance marketplace provider."

105.   Plaintiff selected a website link that included in its description the phrases "Arizona health insurance" and "Affordable Care Act Marketplace Provider."

106.   Plaintiff called the enrollment telephone number listed on the website and spoke with a customer service representative.

107.   The health insurance enrollment process was conducted exclusively via telephone, with the representative reading information to Plaintiff regarding coverage options and discussing coverage benefits and costs.

108.   Plaintiff later discovered the telephone number she had called is associated with Defendant National Association of Preferred Providers.

109.   Plaintiff was advised by the customer service representative she had been enrolled in the following healthcare plans:

      a)     Pivotal 1000 - Critical Illness; Member and Spouse

      b)     Prime 100 – Accidental Death and Dismemberment; Family

      c)     Vital Care Elite – Wellness and Preventative Care Services; Member and Spouse

110.    Plaintiff was advised by the customer service representative these coverages were complete with a certificate application date of April 20, 2021, and a covered services effective date of May 1, 2021.

111.    Plaintiff received a confirmation email dated April 20, 2021, from "noreply@benefitsportal.net" stating her enrollment had been successfully completed. She was granted access to the Salvesen Health online portal.  Plaintiff was informed via an e-mail dated April 20, 2021, she would receive "a welcome packet in the mail within 10-14 business days."

112.    Plaintiff did not receive a welcome packet.  Plaintiff received membership cards from Defendant National Association of Preferred Providers for the healthcare coverage plans listed above.

113.    Plaintiff made an initial policy premium payment of $653.95 on April 20, 2021.  Thereafter, through November 26, 2021, Plaintiff paid monthly policy premium payments of $554.95.  Plaintiff made her payments timely and never missed a payment.

114.    Plaintiff made multiple attempts via telephone to obtain a written copy of her insurance policy.  Her insurance policy was not available on the portal.  Her portal access only showed coverage types and associated premiums.

115.    With reasonable expectation, Plaintiff never received a Certificate of Coverage, as referenced in the Membership Agreement, nor any additional policy or coverage documents.  Defendants failed to furnish Plaintiff with any of the entitled documentation related to her coverage.

116.    Based on information contained in documents later provided to the Arizona Department of Insurance (hereafter "AZDOI") by Defendants, Plaintiff learned later that: 1) she had been enrolled in Defendant membership with National Association of Preferred

Providers; 2) Vital Care Elite is not an Affordable Care Act qualified medical plan; 3) Pivotal 1000 coverage is administered by Defendant Salvasen Health; 4) Prime 100 is administered by Salvasen Health; and 5) Defendant Blackhawk Claims Service GA, Inc. is the third party administrator authorized to collect her membership and monthly premium payments.

117.    On May 4, 2021, Plaintiff presented to Spectrum Dermatology to evaluate a lump on her right upper leg.

118.    On May 12, 2021, Plaintiff presented for an MRI at Southwest Medical Imaging. Impressions included sarcoma favored.  A biopsy was recommended.

119.    On June 4, 2021, Plaintiff received biopsy results and was diagnosed with a rare, fast-growing, cancerous sarcoma.

120.    Plaintiff's doctors told her she would have to undergo surgery and receive additional treatment.

121.    Between June 11, 2021, and June 22, 2021, Plaintiff underwent several extensive, painful surgeries, radiation, and additional cancer treatment.

122.    Prior to her surgery on June 11, 2021, Plaintiff contacted Salvasen Health to ensure coverage.  Plaintiff called the number listed on her insurance card.  After long wait times and several transfers, Plaintiff was verbally informed by a representative her cancer treatment was covered by Salvasen Health.

123.    On June 11, 2021, Plaintiff presented to HonorHealth Scottsdale Shea Medical Center for surgery.  Plaintiff provided her insurance cards to hospital administration.  Plaintiff was informed the hospital administration spoke with a representative from Salvasen Health. Salvasen Health verified to hospital administration Plaintiff was covered for the treatment and zero deductible was due at that time.  Based on this information, Plaintiff went ahead with the surgery.

124.    Plaintiff was left with a large, gaping wound on her upper right leg.  On June 25, 2021, Plaintiff presented to HonorHealth Scottsdale Osborn Medical Center for her second surgery.  Plaintiff provided her insurance cards to hospital administration.  Plaintiff was informed hospital administration verified coverage through Salvasen Health.  Based on this information, Plaintiff went ahead with the second surgery on June 25, 2021, in which the wound was surgically closed.

125.    Plaintiff was non-ambulatory following surgery, and remained wheelchair bound for over four months.  In November 2021, she transitioned to a walker.

126.    Throughout this time, and prior to every major surgery and treatment, Plaintiff reached out to the member services telephone number listed on her membership cards to ensure coverage.

127.    Plaintiff's cancer treatment providers, including but not limited to: HonorHealth Scottsdale Shea Medical Center; HonorHealth Scottsdale Osborn Medical Center; Banner Health; Arizona Premier Surgery; Arizona Center for Cancer Care; and Phoenix Plastic Surgery, contacted her health plan via the telephone number listed on the membership cards for preauthorization.  Plaintiff and her providers were informed by the health plan representatives that the cancer treatments required were covered services under her plan.

128.    After several failed attempts to contact Salvasen Health, an experienced billing administrator from Phoenix Plastic Surgery contacted Plaintiff.  The administrator informed Plaintiff she believed Salvasen Health to be fraudulent and recommended Plaintiff contact Arizona Department of Insurance (AZDOI).  Plaintiff was extremely distressed, while continuing to suffer immense physical pain from cancer treatments, surgical intervention, and radiation.

129.    Plaintiff has incurred $493,838.48 in medical bills for services covered under the healthcare plans sold to her by Defendants.  Defendant Blackhawk has paid a total of $54.90 towards Plaintiff's initial dermatology visit.  Defendants have failed and refuse to pay any further claims.

130.    On December 21, 2021, Plaintiff filed a complaint with the AZDOI.

131.    In March 2022, Plaintiff was required to retain an attorney to assist her in asserting her claims and protecting her rights.

132.    On May 23, 2022, the AZDOI investigator contacted Plaintiff advising her AZDOI was conducting an ongoing investigation of her complaint.  The investigator provided Plaintiff a copy of the Official Order of the Texas Commissioner of Insurance, No. 2022-7308 dated April 26, 2022.  The consent order stated Triada Assurance Holdings, LLC dba Salvasen Health, Salvasen Health Holdings, LLC, Salvasen United Association, Inc. dba Salvasen Health and Barry Jay Glenn have engaged in acts constituting the business of insurance without a license or other authorization and have agreed to cease and desist from engaging in the unauthorized business of insurance and to comply with the terms contained in the order.

133.    During the investigation, through a public records request on May 26, 2022, Plaintiff obtained the AZDOI complaint file, which included a copy of Plaintiff's "Membership Agreement" form (hereafter the "Agreement") provided by Salvasen Health to the AZDOI.  Plaintiff also obtained copies of the AZDOI files for several additional claimants, all of whom experienced similar fraudulent and non-compliance issues with Defendants.

134.    On May 16, 2022, after reviewing the documents provided by the AZDOI, Plaintiff learned Defendants were not licensed to market, sell and/or administer the healthcare coverage plans they sold to her to provide coverage for her in Arizona.  Further, Plaintiff learned Defendants had solicited and sold health insurance policies and certificates of coverage

to approximately 65,000 consumers nationwide during the period of mid-2020 through at least May 31, 2021.

135.    Although Plaintiff never directly received a copy of her policy from Defendants, she purchased Pivotal 1000, which covers critical illness.  It is clear from the Agreement Salvasen Health presented to the AZDOI, Plaintiff met all of the requirements for coverage of her cancer treatment under this critical care illness plan.

136.    The Agreement Salvasen Health presented to the AZDOI stated there was a waiting period of thirty (30) days and for pre-existing conditions, one-hundred and eighty (180) days.

137.    Plaintiff's coverage was completed with a certificate application date of April 20, 2021. Plaintiff was diagnosed with cancer on June 4, 2021.  Plaintiff therefore satisfied the waiting period, as she had no pre-existing issues or cancer diagnosis.

138.    The Agreement also indicates, "no benefits are payable for Cancer or Carcinoma in Situ if the Member was previously diagnosed before this Certificate was in force and, after the previous diagnosis, the member has not gone 12 months without treatment before a new diagnosis of Caner/Carcinoma in situ is made."  Again, Plaintiff had no pre-existing diagnosis of cancer. This clause is therefore inapplicable to Plaintiff.

139.    The Agreement also specifically included exclusions:

a)    Intentionally self-inflicted injury or action while sane or insane.

b)    Suicide or attempted suicide while sane or insane.

c)    Substance abuse, except for substance abuse innocently sustained at the hands of a doctor.

d)    War – declared or undeclared – or military conflicts, participation in an insurrection or riot, civil commotions, or state of belligerence.

140.    The Agreement did not exclude cancer treatment.

141.     Defendants sold Plaintiff the insurance policy as an unlicensed provider; failed to issue a written policy to its insured; failed to communicate with its insured and her providers; and refused to cover the medical bills associated with her coverage.

142.     In the Agreement provided by Salvasen Health, Defendant National Association of Preferred Providers states the healthcare plans sold to Plaintiff are administered by Salvasen Health. Salvasen Health represented to Plaintiff that they are in the business of providing healthcare insurance to Arizona residents.   Defendants represented they were legally authorized to provide healthcare coverage so Arizona residents could obtain medical treatment with medical providers in Arizona.  In fact, at all times relevant hereto, Salvasen Health was not licensed to sell, distribute or administer any healthcare insurance plans in the State of Arizona.

## STATE ADMINISTRATIVE ACTIONS AGAINST MEMBERS OF THE GLENN ORGANIZATION

143.     After selling health insurance policies across the United States, complaints started flooding in when Defendants refused to pay for covered medical expenses.

144.     Consumers contacted their respective state insurance regulators, who in turn began investigating the fraudulent practices of Barry Jay Glenn, Salvasen Health, Triada Assurance Holdings and other Glenn Organization entities.

145.     The complaints regarding Defendants' fraudulent conduct were similar:

> There have also been reports of Salvesen coverage being sold to consumers searching for ACA-compliant plans despite the products failing to meet the ACA's requirements for comprehensive coverage; such as covering pre-existing conditions or limiting annual out-of-pocket costs.  Salvesen enrollees have also reported a failure [to] return phone calls or otherwise communicate with them regarding claims.

Madeline O'Brien, Response to Deceptive Marketing of Limited Plans Shows States Can Take Proactive Steps to Protect Consumers, Georgetown University McCourt School of Public Policy, Center on Health Insurance Reforms, CHIRblog, May 6, 2022.

146.    Commentators noted that "[t]he company appeared to use a number of broken intermediaries, shell websites, and unstaffed phone lines that made it difficult for consumers to obtain help, but made it more difficult for insurance regulators to track down the perpetrators of the fraud."  Madeline O'Brien, Response to Deceptive Marketing of Limited Plans Shows States Can Take Proactive Steps to Protect Consumers, Georgetown University McCourt School of Public Policy, Center on Health Insurance Reforms, CHIRblog, May 6, 2022.

147.    In fact, Defendants operated Salvasen Health without ever registering any of the companies doing business as Salvasen with any state insurance regulator, in any state.

148.    Multiple states took regulatory action in 2022 and 2003 against entities operated by the Glenn Organization.

## WISCONSIN

149.    On January 31, 2022, the Wisconsin Office of the Commissioner of Insurance alleged violations of state law against Salvasen Health, in Case No. 21-C44271.

150.    Barry Jay Glenn, in the name of Salvasen Health, LLC, agreed to "cease and desist writing new business and renewing existing business in the State of Wisconsin or assuming business affecting Wisconsin insureds."

151.    Barry Jay Glenn further agreed that "[t]he Respondent shall pay a forfeiture of $14,000 to the State of Wisconsin."

152.    The Order set out the violations committed by the Barry Jay Glenn and the Glenn Organization in connection with its activities in Wisconsin:

- "the further transaction of business by the Respondent in the State of Wisconsin would be contrary to the interests of policyholders and the general public;"

- "the Respondent's methods and practices of doing business are not consistent with the interests of Wisconsin insureds or the public;"

- "the policies sold by Respondent in Wisconsin meet the definition of insurance in Wis. Stat. § 600.03(25)(a) because Respondent purports to distribute risk for compensation;"

- "Pursuant to Wis. Stat. § 601.04(2), Respondent is required to have a non-domestic certificate of authority to do insurance business in Wisconsin;" and

- "Respondent violated Wis. Stat. § 601.11, by engaging in the business of insurance under Wis. Stat. § 618.02(2), without a certificate of authority each time Respondent market, insured, and collected premiums in Wisconsin."

153.    In the Order, the Wisconsin Office of the Insurance Commissioner determined that the continued operation of Salvasen Health in Wisconsin was against the interests of the public:

- "the further transaction of business by the Respondent in the State of Wisconsin would be contrary to the interests of policyholders and the general public;" and

- "the Respondent's methods and practices of doing business are not consistent with the interests of Wisconsin insureds or the public;"

154.    The Order also contained a summary of consumer complaints received from insureds:

- "one complaint alleges that the consumer googled 'ACA' looking for health insurance under the Affordable Care Act and an insurance agent called him and sold him four separate policies (critical illness, AD&D, Dental, Wellness & Preventative) but when he received the 'membership card' from Respondent it stated, 'THIS PLAN IS NOT ACA COMPLIANT;'"

- "another complaint reported difficulty having claims paid and concluded the insurance coverage 'has been a total fraud;'"

- "a third consumer reported that he received a call from an insurance agent that represented he was purchasing a Catastrophic Plan but after his covered spouse was hospitalized he was told he only had Salvesen Health Limited Medical, a limited benefit insurance;"

- "a fourth consumer reported frustration submitting a covered claim to Respondent.  'They advertised coverage for preventative services by 100%.  They have paid nothing;'" and

- "the fifth consumer reported that she purchased two policies from Respondent (Champion AD&D 300K and Vital Care Pro + HI 200) when she realized the policies did not provide the coverage she expected she experienced difficulty canceling the plans."

155.   The Wisconsin Office of the Insurance Commissioner issued a press release on March 22, 2022 announcing the order against Salvasen Health "prohibiting [it] from issuing new policies and renewing existing policies to Wisconsin residents."

156.   The press release explained "Salvasen was issuing limited benefit health plans which did not provide Minimum Essential Coverage under the Affordable Care Act.  Salvasen was also not licensed to conduct insurance business in Wisconsin."

157.   The press release further explained that the federal government had opened a special enrollment period for former Salvasen Health customers to enroll in plans that were compliant:

> Centers for Medicare and Medicaid Services (CMS) will be opening a Special Enrollment Period (SEP) for Salvasen customers to get enrolled in one of the many health plan options available on the federal marketplace known as Healthcare.gov.  A SEP allows consumers in specific situations to enroll in health coverage outside of the annual Open Enrollment Period.

Press Release, Wisconsin Office of the Commissioner of Insurance, March 22, 2022.

158.   Wisconsin Insurance Commissioner Nathan Houdek explained in a subsequent interview that "[c]onsumers were also misled to believe they were buying plans in compliance with the Affordable Care Act, which they were not."  Erik Gunn, Insurer Cancelled for Sub-

Standard Plans; Clients Will Get Healthcare.gov Enrollment Option, Wisconsin Examiner, Mar. 23, 2022.

159.    During the Glenn Organization's operations in Wisconsin, approximately 900 Wisconsin citizens were policy holders.

## SOUTH DAKOTA

160.    The South Dakota Division of Insurance investigated Salvasen Health, and determined that it, "by and through various entities or affiliates, offered and provided unauthorized health coverage to at least 220 South Dakota residents.

161.    The South Dakota Division of Insurance alleged that Salvasen Health was an "unauthorized insurer" under SDCL § 58-1-2 (which describes an "unauthorized insurer" as "one which does not hold a subsisting certificate of authority issued by the director to engage in the insurance business in this state").

162.    The South Dakota Division of Insurance also alleged violations of SDCL Ch. 58-8, the chapter of the South Dakota Insurance Code addressing unauthorized insurers.  That portion of the South Dakota insurance code establishes criminal liability for certain acts related to unauthorized insurers.

163.    The South Dakota Division of Insurance further alleged violations of SDLL § 58-6-1, which requires a certificate of authority in order to transact insurance in South Dakota.  Violation of SDCL § 58-6-1 is a Class 2 misdemeanor.

164.    The South Dakota Division of Insurance also alleged violations of SDCL § 58-33-2, which prohibits unfair or deceptive acts and practices in the business of insurance.  Violation of SDCL § 58-33-2 is a Class 2 misdemeanor.

165.    Salvasen Health was aware of the allegations against it and waived its due process rights and voluntarily entered into a consent order.

166.    Barry Jay Glenn signed the consent order on behalf of Salvasen Health.

167.    Pursuant to the consent order dated March 29, 2002, Salvasen Health was ordered to "permanently cease and desist from offering or selling health coverage or health insurance to the residents of the State of South Dakota …"

## **MICHIGAN**

168.    By July 2022, the Michigan Department of Insurance and Financial Services (the "Department" or "DIFS") issued a Cease and Desist Order against Salvasen Health Holdings, LLC a/k/a Salvasen Health, in Enforcement Case No. 22-16842.

169.    The Department issued a Statement of Findings with the Cease and Desist Order.

170.    The Department alleged:

> Respondent is a legal entity, which purports to engage in the business of insurance.  It was formed on-or-around May 2, 2021, as a domestic limited liability company in Texas.  It operates a website … through which it advertises offering a number of health insurance plans, including a Health Indemnity Plan (HIP), GAP insurance, and 24-Hour Accident and Limited Benefit Medical Insurance Plan.  The website is accessible to Michigan residents and, as of the date of DIFS' investigation, lacks any disclaimer alerting potential insureds that Respondent lacked a certificate of authority to issue plans in Michigan.

171.    The Department further alleged:

> Respondent does not have a certificate of authority authorizing it to serve as an insurer within this state as required by MCL 500.402.  Nor have its business practices, financials, policies or forms been approved by DIFS or, to DIFS' knowledge, by another state.  To the contrary, on-or-around April 26, 2022, Respondent's home state of Texas took disciplinary action against Respondent for conducting business in the state of Texas without licensure.

172.    The Department, in the Statement of Findings, also alleged:

> - "Section 2006 of the Code, MCL 500.2006, requires that a person timely pay the benefits provided under the terms of its insurance contract or policy.  Undisputed, untimely paid claims are subject to an additional

twelve (12%) interest and failure to comply with this section constitutes an unfair trade practice"; and

- "To the extent Salvasen Health Holdings, LLC a/k/a Salvasen Health (Respondent) may be considered a health plan governed by subsections (8) and (14) of Section 2006, MCL 500.2006 (8) – (14), it was obligated to pay a clean claim within forty-five (45) days and any claims paid after this period is subject to twelve percent (12%) interest per annum.  See MCL 500.2006(8)(a)".

173.    In the Statement, the Department described the experiences of four Michigan residents that had filed complaints with the Department.

174.    The Department alleged consumer "A.J." "stated that his healthcare provider sent a claim to respondent, and it went unpaid.  A.J. purportedly attempted to contact Respondent.  The only person who responded was an online representative, who gave A.J. a different address for claims processing.  A.J. sent the claim to this address but did not receive a response.  His healthcare provider's bill apparently remained unpaid."

175.    The Department alleged consumer "T.G." received a "membership card" that "had T.G.'s name on it, claimed an 'Effective' date of February 1, 2021, and included a member number ending in 3278.  T.G. presented a medical bill for medical services provided on July 22, 2021, totaling nearly Thirteen Thousand Dollars ($13,000.00) that, apparently, went unpaid."

176.    The Department alleged its "staff reached out to Respondent for information regarding business practices, representations to Michigan residents, and the consumer complaints.  Respondent acknowledged that it was not an authorized insurer in Michigan and that it had not received an opinion from the United States Department of Labor recognizing it as an employer-funded health plan and, therefore, exempt from state health care regulation pursuant to the federal Employment Retirement Income Security Act of 1974."

177.    The Department alleged Salvasen Health "failed to timely pay claims on behalf of Michigan residents which were covered by the contract or policy that Respondent presented to such residents and, in so doing, committed an unfair trade practice as defined in Michigan law", in violation of Section 2006 of the Michigan Insurance Code.

178.    The Department alleged violations of the following statutes:

- Mich. Comp. Laws § 500.402, which states that it is a violation of the Michigan Insurance Code for an individual or legal entity to act as an insurer and, also, for an insurer to issue a policy or otherwise transact insurance in Michigan without a certificate of authority granted by the Director of the Department of Insurance and Financial Services;

- Mich. Comp. Laws § 500.402a, which identifies several activities for which a certificate of authority is required (whether by mail or otherwise), including issuing or delivering insurance contracts to Michigan residents; soliciting applications for insurance contracts from Michigan residents; collecting premiums, membership fees, assessments, or other consideration for insurance contracts from Michigan residents; and doing or proposing any act of substantial equivalence thereto; and

- Mich. Comp. Laws § 500.2007, which includes making, publishing, disseminating, circulating, or placing before the public - whether directly or indirectly – an advertisement, announcement, or statement with any untrue, deceptive, or misleading statement regarding the business of insurance in the definition of unfair or deceptive acts or practices in the business of insurance.

179.    The Department noted the following enrollment and premium payment information in the Statement of Facts:

- "Respondent reported that Two Thousand Twenty-Two (2,022) Michigan residents purchased one (1) of forty-two (42) health insurance plans administered by Respondent between June 14, 2020, and November 15, 2021.  The premiums collected in connection with these plans totaled Six Hundred Nineteen Thousand, Eighty-Three Dollars and Eighty-Three Cents ($619,083.83)"; and

- "Respondent also reported that, as of February 14, 2022, two hundred fifty-five (255) Michigan residents held a membership in a plan sold by Respondent."

180.    The Statement of Facts described the monetary penalties and repayment obligations of entities found to have committed such violations.

181.    The Cease and Desist Order directed Salvasen Health Holdings, LLC to "immediately CEASE AND DESIST from all activities in violation of the [Michigan Insurance] code as described in the Statement of Findings."

182.    The Cease and Desist Order advised Salvasen Health Holdings, LLC that it had 30 calendar days to contest the Cease and Design Order by requesting a hearing.

183.    The Director of the Department, Anita G. Fox, said the following upon the issuance of the Cease and Desist Order to Salvasen: "[the Department] is committed to protecting Michigan consumers from companies that operate in violation of state and federal laws."

184.    Ms. Fox further remarked, "[the Department's] regulatory function serves to ensure that Michiganders have safe access to legitimate services, including health insurance, from companies that will be there to pay claims when their policyholders need them."

185.    The Department's Cease and Desist Order garnered significant attention in the media. *See, e.g.*, Frank Witsil, Michigan Orders Salvasen Health to Stop Selling Insurance Policies Amid Licensing Concerns, Detroit Free Press, July 26, 2022.

186.    On October 24, 2022, the Department entered a Final Order to Cease and Desist.

187.    The Department noted "Respondent failed to request a hearing or otherwise respond to [the Department's] Order."

188.    The Department noted, "[b]ecause Respondent failed to respond, the unchallenged Order is accepted as true."

189.    The Department reached a number of Findings of Fact and Conclusions of Law, including the following:

- "By forming a legal entity purporting to engage in the business of insurance in Michigan without a certificate of authority to do so …, Respondent violated Sections 402 and 402a of the Code …";

- "Respondent knew or should have known that … benefits must be timely paid under the terms of insurance contracts or policies.  To the extent Respondent may be considered a health plan governed by subsections (8) and (14) of Section 2006 of the Code, it was obligated to pay a clean claim within forty-five (45) days.  When Respondent failed to do so … Respondent engaged in an unfair trade practice …"; and

- "Respondent knew or should have known that, … it is an unfair or deceptive act or practice in the business of insurance to make, publish, disseminate, circulate, or place before the public an advertisement, announcement, or statement with any untrue, deceptive or misleading statement regarding the business of insurance.  By directly or indirectly publishing advertisements, pamphlets, or statements containing misleading statements that resulted in thousands of Michigan residents purchasing what they believed to be a valid health insurance policy when, in fact, Respondent was not authorized to offer such policy in Michigan … Respondent committed unfair or deceptive acts or practices in the business of insurance …"

190.   In the Final Order to Cease and Desist, the Department imposed fines in the amount of $215,000 and restitution in the amount of $632,804.83 (consisting of the return of premiums paid, as well as unpaid claims).

## MISSISSIPPI

191.   Authorities in Mississippi also took action against certain Defendants.

192.   The Mississippi Insurance Department received complaints from consumers and promptly began investigating.

193.   On October 26, 2022, Mississippi Commissioner of Insurance, Mike Chaney, entered a Cease and Desist Order Without Notice in an administrative proceeding, against Triada Assurance Holdings, LLC dba Salvasen Holdings.

194.    The administrative matter was styled "Mississippi Insurance Department versus Triada Assurance Holdings, LLC dba Salvasen Holdings," Cause No. 22-7729, before the Commissioner of Insurance of the State of Mississippi.

195.    In the Cease and Desist Order, Commissioner Chaney noted:

> WHEREAS, the Mississippi Insurance Department ('MID') has received evidence that indicates TRIADA ASSURANCE HOLDINGS, LLC dba SALVASEN HOLDINGS (hereinafter 'Respondent') has violated the Mississippi Insurance Code by engaging in the business of insurance in the State of Mississippi by marketing and selling health insurance products to Mississippi residents without having first obtained a license.

196.    Commissioner Chaney further noted that Mississippi insureds had purchased health insurance plans that they thought were major medical plans, that turned out to be limited benefit plans:

> WHEREAS, the MID has received complaints from insureds stating that they purchased a health insurance plan from Respondent which they believed was major medical health insurance, but that Respondent failed to pay claims under their policy, which turned out to be a limited benefit plan and not major medical coverage.  Respondent actively sold their products to Mississippi residents without first obtaining a license from the Mississippi Insurance Department, in violation of Miss. Code Ann. § 83-21-1, et seq.

197.    Commissioner Chaney ordered, "that, pursuant to the authority granted to the Commissioner of Insurance by Miss. Code Ann. § 83-1-49 to enjoin any unlicensed person, company, corporation, or association that has engaged in improper or unauthorized activity, TRIADA ASSURANCE HOLDINGS, LLC is hereby ordered to CEASE and DESIST conducting the business of insurance in this State pending a final determination by the Commissioner."

198.   Commissioner Chaney further ordered, "Pursuant to this Cease and Desist Order, the Respondent may not collect or receive premiums, may not write any new business or accounts; may not sell, solicit or negotiate the business of insurance; and may not service or administer any current existing business."

199.   Commissioner Chaney advised that should Respondent fail or refuse to comply with this Cease and Desist Order, Mississippi law provides that such violation shall be a misdemeanor and, upon conviction, shall be punishable by a fine of not more than Five Thousand Dollars ($5,000.00) per violation."

200.   Following issuance of the Order, local news outlets reported the outcome of the administrative matter:

- "'Salvasen Holdings marketed insurance plans falsely, claiming they were major medical policies when they were in fact limited plans,' [the Mississippi Insurance Department] said."

- "Commissioner of Insurance Mike Chaney said [the Mississippi Insurance Department] received a complaint from a customer who thought they bought a major medical health insurance plan from Salvasen Holdings."

- "'Salvasen failed to pay claims under that policy, which turned out to be a limited plan,' Commissioner Chaney said."

Anne Summerhays, MID Issues Cease and Desist Order to Salvasen Holdings, Triada Assurance Holdings, Magnolia Tribune, Nov. 1, 2022.

## MINNESOTA

201.   Minnesota authorities also took administrative action against certain Defendants.

202.   The Minnesota Department of Commerce named Salvasen Health Holdings, LLC; Salvasen United Association, Inc.; TrinityHealth Plan Administrators, LLC; and Barry Glenn as respondents.

203.   The Department of Commerce served a Notice and Order ("Notice") for Prehearing Conference on the respondents on November 9, 2022.

204.   The Notice alleged the following violations:

- Count I, "The Salvasen Companies, acting under the direction and control of Barry Glenn, solicited and made, or aided in soliciting or making, unauthorized insurance contracts in [the State of Minnesota]," in violation of Minn. Stat. § 60A.08, subd. 4.

- Count II, "The Salvasen Companies, acting under the direction and control of Barry Glenn, transacted insurance business in Minnesota without a license, certificate of authority, or other authorization issued by the commissioner," in violation of Minn. Stat. § 60A.07, sub. 4.

- Count III, "The Salvasen Companies, acting under the direction and control of Barry Glenn, administered insurance plans in Minnesota without a license issued by the Department of Commerce," in violation of Minn. Stat. § 60A.23, sub. 8(3).

- Count IV, "The Salvasen Companies, acting under the direction and control of Barry Glenn, failed to submit their insurance policy forms and rates for prior review by the Department of Commerce, in violation of Minn. Stat. § 62A.02, subd. 4 …"

- Count V, "The Salvasen Companies, acting under the direction and control of Barry Glenn, have repeatedly violated numerous provisions of Minnesota law.  Accordingly, in addition to the imposition of a civil penalty, the commissioner intends to issue an order directing the Respondents to cease and desist from entering into contracts of insurance, administrating policies of insurance, or otherwise transacting any insurance business in Minnesota without a license, certificate of authority, or authorization from the Commissioner."

205.   A preliminary conference was held on December 28, 2022, before Administrative Law Judge Ann C. O'Reilly.  Salvasen Health Holdings, Salvasen United Association, TrinityHealth Plan Administrators and Barry Glenn failed to appear at the hearing.

206.   As a result, the administrative law judge issued findings of fact, conclusions of law, and recommendations upon default.

207.  Minnesota Commissioner of Commerce Grace Arnold delegated the authority to issue a final order in the matter to Designated Decision-Maker James Patrick Barrone.

208.  Mr. Barrone informed the Department of Commerce and the respondents of their right to file exceptions and argument with the Commissioner regarding the Administrative Law Judge's recommendation on or before February 27, 2023.

209.  Neither the Department of Commerce nor the respondents submitted exceptions or argument, and the record closed on February 27, 2023.

210.  On April 17, 2023, Mr. Barrone entered findings of fact, conclusions of law, and an order, in the name of Commissioner Grace Arnold.

211.  Mr. Barrone ordered respondents Salvasen Health Holdings, Salvasen United Association, TrinityHealth Plan Administrators, and Barry Glenn to pay $553,000 as a civil penalty, and further ordered respondents to "cease and desist from engaging in operations in the State of Minnesota or regarding Minnesota residents."

212.  Findings of fact were incorporated in the order, including the following:

- "Respondents Salvasen Health Holdings, LLC; Salvasen United Association, Inc.; TrinityHealth Plan Administrators, LLC (collectively, 'Salvasen Companies' or 'Salvasen') are a group of affiliated companies all based in Texas and all operating at the direction and under the control of a Texas resident, Barry Glenn ('Glenn'), that have flouted Minnesota law by selling health insurance and administering insurance claims without obtaining the necessary license, certificate of authority, or authorization from the Department of Commerce."

- "Each of the Salvasen Companies unlawfully sold or assisted in selling unapproved health insurance policies to hundreds of Minnesota consumers and/or administered claims made under those policies without a license, certificate of authority, or authorizations.  The Salvasen Companies collected substantial premiums from Minnesotans who were led to believe that they had purchased legit health care insurance only to have their medical claims denied or ignored after they sought medical care."

- "TrinityHealth Plan Administrators, LLC ('Trinity') is a Texas limited liability company and Glenn is its manager. Trinity provides or has provided claims-administration services for insurance policies issued by the Salvasen Companies."

- "The Salvasen Companies all sold or assisted in selling health insurance in Minnesota and across the country under the names 'Salvasen' or 'Triada.' The Salvasen Companies have provided claims-administration services for claims submitted by Minnesota residents made under policies sold by the Salvasen Companies."

- "None of the Salvasen Companies has ever held a license to do insurance business in Minnesota. Moreover, none of the Salvasen Companies have ever submitted any of the policy forms they used in Minnesota for review and approval by the Commissioner."

- "On information and belief, the Salvasen Companies had at least 544 Minnesota insureds as of December 2021."

- "The Department has received a number of complaints from Minnesota regarding the Salvasen Companies' insurance-related activities in the state. Minnesotans have complained that they were misled regarding the coverage provided by the insurance that they purchased, that the Salvansen [sic] Companies improperly denied claims, that the Salvasen Companies failed to acknowledge claims in a timely manner, or at all, and that the Salvasen Companies ignored and delayed responding to inquiries concerning the status of claims."

- "In response to the Department's inquiry, the Salvasen Companies provided a spreadsheet listing 369 'Minnesota members' as of February 2022. The spreadsheet did not provide a complete list of all Minnesota residents who purchased insurance from Salvasen Companies."

- "The Salvasen Companies further identified five different health care plans provided in Minnesota. On information and belief, the Salvasen Companies' disclosure of health plan was incomplete. They, in fact, offered at least ten more health plans in Minnesota that they failed to disclose."

- "The Department very conservatively estimates that the Salvasen Companies received premium payments from Minnesotans in an amount between $850,000 and $1,300,000."

213.   Conclusions of Law were incorporated into the order, including the following:

- "Respondents never held a license to do insurance business in Minnesota. Respondents never submitted any of the policy forms for review and approval.   Respondents never held a license to administer insurance plans."

- "The record clearly establishes that Respondents sold health insurance and administered health insurance claims without obtaining the necessary license, certificate of authority or authorization from the Department. Respondents sold unapproved health insurance policies to hundreds of Minnesota consumers.  Respondents administered many of those policies. Respondents collected substantial premiums from Minnesotans who believed they had purchased legitimate health care insurance.  Many Minnesota consumers had medical claims denied or ignored after they sought medical care."

214.   Minnesota Commerce Commissioner Grace Arnold said the following after the entry of the orders: "This is an unfortunate situation where an unlicensed company marketed unapproved health plans in Minnesota, and consumers purchased those products."

## TEXAS

215.   Defendant Barry Jay Glenn was punished in his home State of Texas, along with other Defendants.

216.   On April 26, 2022, Texas Commissioner of Insurance Cassie Brown entered a Consent Order against Barry Jay Glenn; Triada Assurance Holdings, LLC dba Salvasen Health; Salvasen Health Holdings, LLC; Salvasen United Association, Inc. dba Salvasen Health; and "Salvasen Health."  Official Order of the Texas Commissioner of Insurance No. 2022-7308.

217.   In connection with the Consent Order, Defendant Barry Jay Glenn executed an affidavit on April 12, 2022, on behalf of himself, indicating that he "[has] knowingly and voluntarily entered into the foregoing consent order and agree with the consent to the issuance and service of the same…"

218.    On the same date, Barry Jay Glenn executed a second affidavit in his capacity as "President/CEO" and "authorized representative" of Triada Assurance Holdings, LLC dba Salvasen Health; Salvasen Health Holdings, LLC dba Salvasen United Association, Inc. dba Salvasen Health; and "Salvasen Health," indicating that these entities "knowingly and voluntarily entered into the foregoing consent order …"

219.    The Consent Order noted that "Respondents have engaged in acts constituting the business of insurance without a license or other authorization.  Respondents have agreed to cease and desist from engaging in the unauthorized business of insurance…"

220.    The Consent Order included the following findings of fact:

- "Salvasen is located in Houston, Texas and purported to be a health insurance company operating nationwide.  Salvasen holds no license or other authorized issued by TDI [Texas Department of Insurance]"

- "Glenn is the founder, owner, and CEO of Salvasen.  Glenn does not currently hold an active Texas insurance license.  Glenn previously held a general lines agent license issued by TDI in 2006.  TDI records show that this license expired in August 2018."

- "Salvasen is not licensed to engage in the business of insurance in Texas or any other jurisdiction but has marketed its health insurance products nationwide."

- "According to Salvasen, beginning in mid-2020 through at least May 31, 2021, Salvasen solicited and sold health insurance policies and certificates of coverage to approximately 65,000 consumers nationwide.  Salvasen represents that it voluntarily ceased the writing of new business on May 31, 2021."

- "Salvasen's plans were marketed and sold as insurance, although at the time, Salvasen maintained that the plans were not subject to TDI or other state insurance regulation."

- "Glenn engaged in the solicitation, sale, and administration of Salvasen's unauthorized insurance business."

- "TDI and other state insurance regulators received numerous consumer complaints about Salvasen's plans.  Salvasen's plans often were labeled

as 'MEC' plans, or 'Minimum Essential Coverage' plans, as required under the federal Affordable Care Act (ACA).  Limited benefit plans like those sold by Salvasen, however, are not MEC plans.

- "Additionally, consumers complained that, based on Salvasen's representations, the benefits they thought were covered by Salvasen's plans were not actually covered in the plan documents."

- "In late 2021, Salvasen disclosed to state insurance regulators that it had almost 39,000 active policyholders paying $23.9 million in premiums during 2021."

- "TDI and other state regulators investigated Salvasen's operations and demanded that Respondents cease operating an unauthorized insurance plan."

221.    The Consent Order contained conclusions of law, including that Glenn; Triada Assurance Holdings, LLC; Salvasen Health Holdings, LLC; and Salvasen United Association, Inc. (a) violated Texas law by failing to provide information requested by the Texas Department of Insurance, and (b) violated Texas law by engaging in acts constituting the business of insurance without a license or other authorization.

222.    In the Consent Order, the Texas Commissioner of Insurance ordered Glenn; Triada Assurance Holdings, LLC; Salvasen Health Holdings, LLC; and Salvasen United Association, Inc. to "cease and desist from engaging in the business of insurance … effective immediately" and to participate in a detailed wind-down plan under the Texas Department of Insurance.

223.    The Texas Commissioner of Insurance further ordered Glenn; Triada Assurance Holdings, LLC; Salvesen Health Holdings, LLC; and Salvasen United Association, Inc. to not "apply for any TDI-issued license or authorization for 10 years from the date of this order. During that time period, Respondents will not participate in or act as an owner, officer, or shareholder of any TDI-authorized entity."

1

2

## **MASSACHUSETTS**

224.    On November 1, 2021, the Massachusetts Division of Insurance issued a press release warning consumers about Defendants' conduct.

225.    The Division of Insurance noted that "[o]ver the past year, our offices have received inquiries and complaints about organizations such as Salvasen Health, Trinity Health Share, Multiplan/PHCS, BlackHawk claims, CrowdHealth and National Association of Preferred Providers, none of which are insured health carriers, and in some cases are only access to networks of providers."

226.    The Division of Insurance further advised, "[i]t is a violation of the state's insurance consumers protection laws for a licensed agent or company to knowingly mislead or misinform a consumer about the product they are looking to purchase …"

227.    On February 18, 2022, the Division of Insurance issued a "Notice for Consumers Regarding Salvasen Health."

228.    In the Notice, the Division of Insurance noted that "[p]roducts offered through Salvasen Health are not insured health plans and Salvasen Health is not licensed to sell health insurance in Massachusetts."

229.    The Notice advised "Massachusetts residents that products offered through Salvasen Health are terminating as of March 31, 2022."

230.    The State of Massachusetts' official healthcare marketplace implemented a Special Enrollment Period for Massachusetts residents that had purchased plans through Salvasen.

**NEVADA**

231.    On March 3, 2022, the Nevada Division of Insurance issued a press release to notify Nevada consumers that "products/plans offered through Salvasen Health and Triada are terminating as of March 31, 2022."

232.    The Nevada Division of Insurance noted that, "Salvasen Health is *not* authorized to sell health insurance or health plans in the State of Nevada."  (Emphasis in original.)

233.    The press release informed Nevada consumers that Nevada's healthcare marketplace (the Silver State Health Insurance Exchange) would have a Special Enrollment Period for persons that were enrolled in a Salvasen plan.

**Defendants Barry Jay Glenn and Triada Assurance Holdings
Continue to Operate an Insurance Business,
Apparently in Violation of the Consent Order Issued by the Texas
Commissioner of Insurance**

234.    As detailed above, Barry Jay Glenn was a respondent in the Texas Commissioner of Insurance Consent Order dated April 26, 2022.  In that Consent Order, Defendant Glenn was ordered to "cease and desist from engaging in the business of insurance," and was "ordered to not apply for any TDI-issued [Texas Department of Insurance issued] license or authorization for 10 years from the date of this Order."

235.    As detailed above, Triada Assurance Holdings, LLC was also a respondent in the Texas Commissioner of Insurance Consent Order dated April 26, 2022.  In that Consent Order, Triada Assurance Holdings was ordered to "cease and desist from engaging in the business of insurance."  Furthermore, Triada Assurance Holdings was "ordered not to apply for any TDI-issued license or authorization for 10 years from the date of this order."

236.    Triada Assurance Holdings is currently operating an insurance business based out of Houston, Texas.

237.    According to Triada Assurance Holdings' website (https:\\triada.com): "Triada offers group benefit solutions that provide excellent coverage at an affordable price, with products that are easy to understand and even easier to use."  The Triada website states that it offers "supplemental insurance that works for your people."

238.    Defendant Triada Assurance Holdings' website also reflects that Defendant Barry Glenn is currently engaged in the business of insurance.  The Triada website has an "About Us" tab, which leads to a page that says "Meet the Team."  Defendant Glenn is the first person featured under "Meet the Team."  The website states the following below Defendant Glenn's photo and title of "CEO": "Barry Glenn is the founder and CEO of Triada. Barry received his BA in accounting from Texas Tech University in 1984. He has spent the last twenty-five years in insurance and specifically employee benefits management. Barry founded the company with a commitment to innovation and one simple principle, making benefits affordable for every working American. Triada has established themselves as an industry leader by developing innovative insurance products and unique implementation strategies designed to benefit the employee, employer and the broker."

239.    Defendants Triada Assurance Holdings and Barry Jay Glenn appear to be in violation of the Consent Order, as they are announcing to the world through their website that they are "engaging in the business of insurance."

# CAUSES OF ACTION

## Count I

### Racketeering in Violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)

**(All Defendants)**

240.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

241.    Plaintiff is a natural person, and as such is a "person" within the meaning of 18 U.S.C. § 1961(3).

242.    Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted the affairs of the Glenn Organization through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

243.    The Individual Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted the affairs of the Glenn Organization through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

244.    At all times relevant to this Complaint, the Glenn Organization was an association-in-fact within the meaning of 19 U.S.C. § 1961(4), comprised of a network of companies and associates that share a common purpose, including but not limited to:

a)    National Association of Preferred Providers;

b)    Triada Assurance Holdings, LLC;

c)    Salvasen Health Holdings, LLC;

d)    Salvasen United Association, Inc.;

e)    Blackhawk Claims Services GA, Inc.;

f)    National Individual Insurance Agency, LLC;

g) Association Health Care Management, Inc.;

h) Trinity HealthPlan Administrators, LLC;

i) Barry Jay Glenn;

j) Harold L. Brock, Jr. (aka Rusty Brock);

k) Landon Jordan; and

l) Rami Hassan.

m) Jacob Brock; and

n) Roy Franklin Anding, Jr.

245. The Glenn Organization had, and has, the common purpose of obtaining revenue from insurance premiums from affiliated entities in exchange for promises of insurance coverage that they knew would never be provided. The Glenn Organization's pursuit of this common purpose by the actions alleged in this Complaint, including under the guise of insurance policies issued by Salvasen Health, amounted to the conduct of a scheme to defraud Plaintiff Lynn Bunch, and others similarly situated consumers (the "Fraudulent Scheme").

246. Defendant Barry J. Glenn exercised substantial control over the Glenn Organization through the following means:

- Directing the business activities of Triada Assurance Holdings, LLC; Salvasen Health Holdings, LLC; Salvasen United Association, Inc.; and Trinity HealthPlan Administrators, LLC to carry out the Fraudulent Scheme; and

- Coordinating with owners and managers of other entities forming part of the Glenn Organization; including the National Association of Preferred Providers; Blackhawk Claims Service GA, Inc.; National Individual Insurance Agency, LLC; and Association Health Care Management Inc. to carry out the Fraudulent Scheme.

247. Defendant Harold L. Brock, Jr. exercised substantial control over the Glenn Organization through the following means:

- Directing the business activities of National Individual Insurance Agency, LLC to carry out the Fraudulent Scheme; and

- Coordinating with owners and managers of other entities forming part of the Glenn Organization, to carry out the Fraudulent Scheme.

248. Defendant Landon Jordan exercised substantial control over the Glenn Organization through the following means:

- Directing the business activities of the National Association of Preferred Providers, and Association Health Care Management, Inc. to carry out the Fraudulent Scheme; and

- Coordinating with owners and managers of other entities forming part of the Glenn Organization to carry out the Fraudulent Scheme.

249. Defendant Rami Hassan exercised substantial control over the Glenn Organization through the following means:

- Directing the business activities of the National Association of Preferred Providers, and Association Health Care Management, Inc. to carry out the Fraudulent Scheme; and

- Coordinating with owners and managers of other entities forming part of the Glenn Organization to carry out the Fraudulent Scheme.

250. Defendant Jacob Brock exercised substantial control over the Glenn Organization through the following means:

- Directing the business activities of Blackhawk Claims Services, GA, Inc. and Association Health Care Management, Inc. to carry out the Fraudulent Scheme; and

- Coordinating with owners and managers of other entities forming part of the Glenn Organization to carry out the Fraudulent Scheme.

251. Defendant Roy Franklin Anding, Jr. exercised substantial control over the Glenn Organization through the following means:

- Directing the business activities of Blackhawk Claims Services, GA, Inc. to carry out the Fraudulent Scheme; and

- • Coordinating with owners and managers of other entities forming part of the Glenn Organization to carry out the Fraudulent Scheme.

252.   In carrying out the Fraudulent Scheme, the Glenn Organization – and each of the entities that form the Glenn Organization – engaged in interstate commerce as the various entities were organized and located in multiple states and sought to defraud consumers across the United States.

253.   Under the direction of the Defendants, the Glenn Organization had an ongoing organizational framework for carrying out its objectives and functional as a continuing unit with a common purpose.

254.   Each participant in the Glenn Organization had a systematic linkage to each other participant through corporate ties, contractual relationships, financial ties, and the continued coordination of their activities.

255.   By engaging in the Fraudulent Scheme, Defendants conducted the affairs of the Glenn Organization through a pattern of racketeering activity.

256.   The racketeering activity was made possible by the regular and repeated use of the facilities, services, legal entities, and employees of the Glenn Organization.

257.   Defendants carried out the Fraudulent Scheme through numerous acts of mail fraud and wire fraud, which are indictable under 18 U.S.C. §§ 1341 and 1343, respectively, and thus constitute racketeering activity within the meaning of 18 U.S.C. § 1961(1).

258.   Defendants used thousands of interstate mail and wire communications to create and perpetuate the Fraudulent Scheme, through communications between and among Defendants and members of the Glenn Organization, money transfers, false statements, misrepresentations, and misleading statements and omissions alleged in this Amended Complaint.

259.   These acts of mail fraud and wire fraud together constitute a portion of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

260.   The pattern of racketeering took place over a period of two years.

261.   Defendants' fraudulent use of the mail included communications between and among Defendants and members of the Glenn Organization, in addition to the following communications sent by interstate mail to Plaintiff and other third parties via the U.S. Postal Service or commercial carrier at Rami Hassan's behest or with his express authorization, and which involved knowingly false statements, misrepresentations, and misleading omissions by Rami Hassan:  An undated letter from the National Association of Preferred Providers to Plaintiff, enclosing "Membership Cards" dated May 1, 2021.  The letter stated, "Enclosed are your association healthcare program membership cards.  You should carry one of them with you at all times."  The cards contained the names and logos of Salvasen Health and National Association of Preferred Providers.

262.   Defendants' fraudulent use of the mail included communications between and among Defendants and members of the Glenn Organization, in addition to the following communications sent by interstate mail to Plaintiff and other third parties via the U.S. Postal Service or commercial carrier at Roy Franklin Anding, Jr.'s behest or with his express authorization, and which involved knowingly false statements, misrepresentations, and misleading omissions by Roy Franklin Anding, Jr.:  An explanation benefits prepared by Blackhawk Claims Administrator dated November 9, 2011, reflecting no patient responsibility and significant discounts and reductions associated with care from Scottsdale Healthcare Osborn.

263.   Defendants' fraudulent use of interstate wire services including telephonic communications with consumers, email communications, and money transfers between and

among Defendants and members of the Glenn Organization; in addition to the following communications that were transmitted, broadcasted, or distributed using interstate telephone lines, interstate wire services, or other interstate electronic media at Landon Jordan behest or with his express authorization, and which involved knowingly false statements, misrepresentations, and misleading omissions by Landon Jordan:   An electronic communication transmitted April 20, 2021, from Association Health Care Management, Inc., reflecting confirmation of enrollment; and a series of electronic transfer of funds from Plaintiff to Association Healthcare Care Management, Inc. on April 20, 2021; May 27, 2021; August 27, 2021; September 26, 2021; October 27, 2021; and November 26, 2021.

264.   Defendants' fraudulent use of interstate wire services including telephonic communications with consumers, email communications, and money transfers between and among Defendants and members of the Glenn Organization; in addition to the following communications that were transmitted, broadcasted, or distributed using interstate telephone lines, interstate wire services, or other interstate electronic media at Rami Hassan's behest or with his express authorization, and which involved knowingly false statements, misrepresentations, and misleading omissions by Rami Hassan:  A telephonic conversation with a representative enrolling Plaintiff on April 20, 2021 on behalf of both National Association of Preferred Providers and National Individual Insurance Agency.

265.   Defendants' fraudulent use of interstate wire services including telephonic communications with consumers, email communications, and money transfers between and among Defendants and members of the Glenn Organization; in addition to the following communications that were transmitted, broadcasted, or distributed using interstate telephone lines, interstate wire services, or other interstate electronic media at Harold Brock's behest or with her express authorization, and which involved knowingly false statements,

misrepresentations, and misleading omissions by Harold Beck:  A telephonic conversation with a representative enrolling Plaintiff on April 20, 2021 on behalf of both National Association of Preferred Providers and National Individual Insurance Agency.

266.   In reliance on the messages conveyed by Defendants in furtherance of the Fraudulent Scheme, Plaintiff purchased what she believed was a legitimate health insurance policy, made regular premium payments, incurred expenses in connection therewith, and suffered loss and damage thereby.

267.   Had Defendants not been complicit and had they not bolstered and furthered the deception of consumers, Plaintiff would not have been injured.  Thus, Plaintiff's injuries were directly and proximately caused by the pattern of racketeering activity described above.

268.   By virtue of these violations of 8 U.S.C. § 1962(c), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

## Count II

## Conspiracy to Conduct the Affairs of a Racketeering Enterprise
## 18 U.S.C. § 1962(d)

### (All Defendants)

269.   Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

270.   Defendants have agreed and conspired to violate 18 U.S.C. § 1962(c), as set forth above, in violation of 18 U.S.C. § 1962(d).

271.   Defendants have intentionally conspired and agreed to directly, and indirectly, conduct and participate in the conduct of the affairs of the Glenn Organization through a pattern of racketeering activity.

272.   Defendants knew that their overt acts and predicate acts of mail fraud described above and wire fraud were part of a pattern of racketeering activity and agreed to the commission of those acts to further their scheme to defraud innocent consumers.

273.   As a direct result and proximate result of Defendants' conspiracy, and the multiple overt acts taken by all Defendants in furtherance of that conspiracy, Plaintiffs have been injured in their business and property.

274.   By virtue of these violations of 8 U.S.C. § 1962(d), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

## Count III

## State Civil Racketeering Violation

### (All Defendants)

275.   Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

276.   The actions of Defendants give rise to the claim of a violation of the Arizona Racketeering Act, A.R.S § 13-2301, et seq.

277.   Pursuant to A.R.S. § 13-2314.04, the State of Arizona has created a private right of action to remedy violations of the Arizona Racketeering Act.

278.   Defendants, individually and collectively, conducted and acted as a criminal enterprise.

279.   Defendants engaged in a pattern of unlawful activity perpetrating a scheme to defraud Plaintiff for Defendants' financial gain through the marketing, sale and/or administration of unlicensed healthcare insurance plans.

280.   Plaintiff made monetary payments to Defendants in the form of monthly premiums in exchange for Defendants' promise of healthcare coverage through properly licensed healthcare insurance coverage plans in Arizona, representations Defendants knew to be false.

281.   Defendants have committed predicate acts under the Arizona Racketeering Act.

282.   Defendants engaged in acts constituting a scheme or artifice to defraud, as defined at A.R.S. § 13-2310.  Some or all of these actions were committed for financial gain and are chargeable or indictable under the laws of the State of Arizona, and punishable by imprisonment for more than one year.

283.   Defendants engaged in acts constituting theft, as defined at A.R.S. § 13-1802. Defendants obtained the property of others by means of material misrepresentations with the intent to deprive the other persons of such property or services.  Some or all of these actions were committed for financial gain and are chargeable or indictable under the laws of the State of Arizona, and punishable by imprisonment for more than one year.

284.   Defendants engaged in acts constituting participating in or assisting a criminal syndicate, as defined at A.R.S. § 13-23-8.  Some or all of these actions were committed for financial gain and are chargeable or indictable under the laws of the State of Arizona, and punishable by imprisonment for more than one year.

285.   Defendants engaged in acts constituting the illegal conduct of an enterprise by associating with an enterprise and conducting the enterprise's affairs through racketeering, as defined at A.R.S. § 13-2312.  Some or all of these actions were committed for financial gain and are chargeable or indictable under the laws of the State of Arizona, and punishable by imprisonment for more than one year.

286.   Plaintiff's damages were a reasonably foreseeable result of Defendants' pattern of unlawful activity.

287.   Plaintiff is entitled to recover damages that reasonably flow from the above unlawful activity.

288.   Plaintiff is entitled to compensatory and treble damages under A.R.S. § 13-2314.04.

### Count IV

### Fraud

### (All Defendants)

289.   Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

290.   Defendants fraudulently represented to Plaintiff they were an authorized healthcare insurance provider properly licensed to provide healthcare coverage plans in Arizona.

291.   Alternatively, Defendants represented to Plaintiff they were affiliated with an authorized healthcare insurance provider properly licensed to provide healthcare coverage plans in Arizona.

292.   At the time Defendants made such fraudulent representations, Defendants were aware the representations were false.

293.   Defendants' representations were material to Plaintiff's decision to purchase healthcare coverage through Defendants.

294.   Defendants intended that their representations be acted upon by Plaintiff in the manner reasonably contemplated.

295.    Defendants intended that its representations would result in Plaintiff purchasing healthcare coverage through them.

296.    Plaintiff was not aware Defendants' representations were false.

297.    Defendants represented to Plaintiff they would pay Plaintiff's covered medical expenses in exchange for her payment of premiums to Defendants.

298.    Plaintiff detrimentally and justifiably relied upon Defendants' false representations by paying Defendants premiums for the purpose of obtaining healthcare coverage, and by foregoing the opportunity to purchase healthcare coverage elsewhere.

299.    Plaintiff further detrimentally and justifiably relied upon Defendants' false and fraudulent representations when she subsequently sought medical treatment and provided Defendants' healthcare identification card to her medical providers. As a direct result of Defendants' false representations, Plaintiff has been harmed by receiving collections notices for the unpaid claims from her medical providers, damaging her personal credit rating and requiring Plaintiff to establish payment plans to avoid the loss of her personal assets, including her home.  Such damage has occurred in the past and will continue in the future.

300.    Plaintiff has suffered lost wages trying to resolve this matter.

301.    Plaintiff has suffered an ascertainable loss as noted above.

302.    Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

303.    As a direct and proximate result of the collective actions of Defendants, Plaintiff has sustained extensive medical payment debt and damage to her personal credit rating. Further, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Moreover, Plaintiff has and/or may have to incur

expenses for medical, psychiatric, and/or psychological counseling and care, as well as general and special damages. Plaintiff has experienced these damages in the past and will continue experiencing them into the future.

## Count V

## Aiding and Abetting Fraud

### (All Defendants)

304.   Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

305.   As alleged above, Defendants engaged in fraudulent acts, including defrauding Plaintiff.  To the extent it is determined that certain Defendants did not commit fraudulent acts, Plaintiff alleges that such Defendants knew of the fraudulent conduct of others and provided substantial assistance to other members of the scheme.

306.   Defendants knew the marketing, sale, and administration of unlicensed healthcare insurance plans constituted fraud. Defendants substantially assisted and encouraged the fraud.

307.   Defendants' actions as alleged herein were intentional, willful, knowing, oppressive or were undertaken with an evil mind, and were undertaken with the intent to inflict severe financial harm on Plaintiff.

308.   Plaintiff has been harmed by receiving collections notices for the unpaid claims from her medical providers, damaging her personal credit rating and requiring Plaintiff to establish payment plans to avoid the loss of her personal assets, including her home.  Such damage has occurred in the past and will continue in the future.

309.   Plaintiff has suffered lost wages trying to resolve this matter.

310.   Plaintiff has suffered an ascertainable loss as noted above.

311.    Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

312.    As a direct and proximate result of the collective actions of Defendants, Plaintiff has sustained extensive medical payment debt and damage to her personal credit rating. Further, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care, as well as general and special damages. Plaintiff has experienced these damages in the past and will continue experiencing them into the future.

## Count VI

### Breach of Fiduciary Duty

**(National Individual Insurance Agency, Harold L. Brock, Jr., Jacob Brock, Landon Jordan, Roy Franklin Anding, Jr.)**

313.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

314.    Defendants National Individual Insurance Agency, Harold L. Brock, Jr., Jacob Brock, Landon Jordan, and Roy Franklin Anding, Jr. are licensed insurance agencies or agents, who contracted between themselves, to market and sell the products of Defendant National Association of Preferred Providers and Defendants Triada Assurance Holdings, LLC; Salvasen United Association, Inc.; and Salvasen Health Holdings, LLC.

315.    As such, pursuant to longstanding state law, those Defendants have a fiduciary duty to Plaintiff to advise her as to their insurance needs.  That duty also requires them to advise a prospective insured, including the Plaintiff, that the plans offered by Defendant

National Association of Preferred Providers and Defendants Triada Assurance Holdings, LLC; Salvasen United Association, Inc.; and Salvasen Health Holdings, LLC were not suitable for Plaintiff's needs.

316.   Plaintiff depended on National Individual Insurance Agency, Harold L. Brock, Jr., Jacob Brock, Landon Jordan, and Roy Franklin Anding, Jr., as licensed insurance agencies and agents, to advise, counsel, and protect the Plaintiff with respect to their health insurance needs and coverage, and accordingly a fiduciary relationship arose between Plaintiff and National Individual Insurance Agency, Harold L. Brock, Jr., Jacob Brock, Landon Jordan, and Roy Franklin Anding, Jr.

317.   As part of their obligations as fiduciaries, National Individual Insurance Agency, Harold L. Brock, Jr., Jacob Brock, Landon Jordan, and Roy Franklin Anding, Jr. were under an obligation to not engage in self-dealing, charge unreasonable or unlawful fees or premiums, deal with unlicensed insurance companies, accept unreasonable or wrongful commissions, engage in an enterprise which caused insureds, like Plaintiff, to purchase an insurance product that results in an exceedingly high profit to National Individual Insurance Agency, Harold L. Brock, Jr., Jacob Brock, Landon Jordan, and Roy Franklin Anding, Jr.

318.   In addition, National Individual Insurance Agency, Harold L. Brock, Jr., Jacob Brock, Landon Jordan, and Roy Franklin Anding, Jr. have a duty of loyalty and must act loyally toward Plaintiff in all matters connected with the procurement of insurance and may not acquire a material benefit from a third party in connection with the sale of products from Defendant National Association of Preferred Providers and Defendants Triada Assurance Holdings, LLC, Salvasen United Association, Inc., and Salvasen Health Holdings, LLC.

319.   Defendants National Individual Insurance Agency, Harold L. Brock, Jr., Jacob Brock, Landon Jordan, and Roy Franklin Anding, Jr. breached that fiduciary duty through a

scheme with others to sell the overpriced and essentially worthless products offered by Defendant National Association of Preferred Providers and Defendants Triada Assurance Holdings, LLC, Salvasen United Association, Inc., and Salvasen Health Holdings, LLC.

320.   Plaintiff has suffered severe emotional distress as a result of the conduct of National Individual Insurance Agency, Harold L. Brock, Jr., Jacob Brock, Landon Jordan, and Roy Franklin Anding, Jr. Plaintiff has incurred $493,838.48 in medical bills for services covered under the healthcare plans sold to her by Defendants.  Defendant Salvasen Health has failed, and refuses, to pay any further claims.  Plaintiff has made arrangements, wherever possible, to make incremental payments on the overdue accounts. Plaintiff experiences extreme, daily emotional stress and financial pressure as a result of these medical bills. Plaintiff is faced with the potential of bankruptcy and foreclosure on her home, causing her severe mental anguish and stress. Plaintiff has suffered lost wages trying to resolve this matter.

321.   Plaintiff has suffered an ascertainable loss as noted above.

322.   Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

323.   As a direct and proximate result of the collective actions of Defendants, Plaintiff has sustained extensive medical payment debt and damage to her personal credit rating. Further, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care, as well as general and special damages. Plaintiff has experienced these damages in the past and will continue experiencing them into the future.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Count VII

## Aiding and Abetting Breach of Fiduciary Duty

### (All Defendants)

324.   Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

325.   As alleged above, Defendants National Individual Insurance Agency, Harold L. Brock, Jr., Jacob Brock, Landon Jordan, and Roy Franklin Anding, Jr. breached their fiduciary duties of loyalty, care, good faith and fair dealing by engaging in a scheme with others to sell the overpriced and essentially worthless products offered by Defendant National Association of Preferred Providers and Defendants Triada Assurance Holdings, LLC, Salvasen United Association, Inc., and Salvasen Health Holdings, LLC.

326.   Defendants knew the marketing, sale, and administration of unlicensed healthcare insurance plans constituted a breach of duty to Plaintiff.

327.   Defendants substantially assisted and encouraged the breach of duties to Plaintiff: (1) to ensure healthcare coverage purchased and administered by Defendants was appropriately licensed; (2) they complied with all regulatory requirements for the jurisdiction in which the services were sold and administered; and (3) they were lawfully able to provide the services for which Plaintiff paid compensation in the form of monthly premiums to Defendants.

328.   Defendants' actions as alleged herein were intentional, willful, knowing, oppressive or were undertaken with an evil mind, and were undertaken with the intent to inflict severe financial harm on Plaintiff.

329.   Plaintiff has been harmed by receiving collections notices for the unpaid claims from her medical providers, damaging her personal credit rating and requiring Plaintiff to

establish payment plans to avoid the loss of her personal assets, including her home.  Such damage has occurred in the past and will continue in the future.

330.    Plaintiff has suffered lost wages trying to resolve this matter.

331.    Plaintiff has suffered an ascertainable loss as noted above.

332.    Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

333.    As a direct and proximate result of the collective actions of Defendants, Plaintiff has sustained extensive medical payment debt and damage to her personal credit rating. Further, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care, as well as general and special damages. Plaintiff has experienced these damages in the past and will continue experiencing them into the future.

### Count VIII

### Bad Faith

### (All Defendants)

334.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

335.    The actions of Defendants give rise to the claim of breach of implied covenant of good faith and fair dealing.

336.    Plaintiff relied upon the contracted agreement with Defendants and reasonably expected, in exchange for timely payment of monthly premiums, her covered medical expenses would be paid by Defendants.

337. Defendants' non-payment of covered medical expenses deprived Plaintiff of a primary benefit of the contracted agreement.

338. Plaintiff had a reasonable expectation that Defendants would comply with any and all licensing or regulatory regulations required to provide healthcare insurance plan services in Arizona.

339. Regulatory actions taken by the Texas Commissioner of Insurance resulted in a material impact on Defendants' ability to meet the contractual obligations of their agreement with Plaintiff. Plaintiff had a reasonable expectation to assume Defendants would disclose such actions taken against Defendants by the Texas Commissioner of Insurance and any other legal or regulatory agencies.

340. Defendants' failure to disclose to Plaintiff the foregoing actions taken against them by the Texas Commissioner of Insurance and other legal/regulatory agencies constituted a breach of their duty of good faith and fair dealing toward Plaintiff.

341. Plaintiff has suffered lost wages trying to resolve this matter.

342. Plaintiff has suffered an ascertainable loss as noted above.

343. Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

344. As a direct and proximate result of the collective actions of Defendants, Plaintiff has sustained extensive medical payment debt and damage to her personal credit rating. Further, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care, as well as general

and special damages. Plaintiff has experienced these damages in the past and will continue experiencing them into the future.

## Count IX

## ERISA Claim, 29 U.S.C. § 1132(a)(1)(B).

### (Defendants)

345.   Plaintiff anticipates Defendants May claim that the plans offered were plans under the Employee Retirement Income Security Act of 1974 ("ERISA").

346.   Plaintiff does not admit that the worthless insurance plans marketed by Defendants were ERISA plans. In fact, as described above, the Michigan Department of Insurance and Financial Services reported that Defendant Salvasen Health Holdings, LLC a/k/a Salvasen Health "acknowledged that… it had not received an opinion from the United States Department of Labor recognizing it as an employer-funded health plan and, therefore, exempt from state health care regulation pursuant to the federal Employment Retirement Income Security Act of 1974."

347.   To the extent that the plans Plaintiff purchased were ERISA plans or could be classified as ERISA plans (including self-funded ERISA plans) Plaintiff affirmatively alleges that Defendants have failed to comply with the requirements of ERISA.  Plaintiff brings this claim pursuant to 29 U.S.C. § 1132(a)(1)(B).

348.   As described above, Plaintiff sought and received treatment, surgery, and incurred medical, hospital, and drug bills for treatment of cancer totaling $493,838.48.

349.   As described above, Defendants have denied her coverage of these medical expenses.

350.   The bases of denial by the Defendants are totally incorrect, as the treatment is covered under the plain terms of respective plans.

351.   Moreover, Plaintiff relied on representations by Defendants in enrolling in coverage and relied on statements by persons who were acting as representatives of any putative ERISA plan.  Said representatives were acting as plan fiduciaries, by giving Plaintiff critical information about the putative plan and Plaintiff's coverage.

352.   Plaintiff brings this action to obtain declaratory judgment, to determine Plaintiff is covered by the putative ERISA plan, and to determine that the plan is liable to pay her medical, hospital, and drug bills as referenced above.

## Count X

## Declaratory Relief:  Duty to Pay

### (Entity Defendants)

353.   Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

354.   Plaintiff desires a judicial determination and declaration of the parties' respective rights and duties under the insurance policies, and specifically a judicial determination and declaration that Plaintiff is entitled to her medical coverage claims, as required by the terms of the policies and applicable law.

355.   A judicial declaration of the rights, duties and obligations of the parties is necessary and appropriate at this time as the Plaintiff may not have a plain, speedy, or adequate remedy at law.

356.   Accordingly, Plaintiff respectfully requests a judicial determination and declaration that the insurance policies provide coverage for the medical claims and that Entity Defendants are liable to the Plaintiff for damages.

1
2
3
4

**Count XI**

**Intentional and Negligent Infliction of Emotional Distress**

**(All Defendants)**

5
6

357.   Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

7
8

358.   The actions of Defendants give rise to the claim of intentional infliction of emotional distress.

9
10
11
12
13
14
15
16

359.   Defendants conduct was extreme and outrageous. The Texas Commissioner of Insurance Order No. 2022-7308, dated April 26, 2022, confirms that certain Defendants were not licensed to engage in the business of insurance in Texas or any other jurisdiction.  The remaining Defendants knew or should have known that Triada Assurance Holdings, LLC; Salvasen United Association, Inc.; and Salvasen Health Holdings, LLC were not licensed to engage in the business of insurance.

17
18
19
20
21
22
23
24
25

360.   Yet, (1) Defendants continued to market its/their health insurance products nationwide; (2) Defendants beginning in mid-2020 through at least May 31, 2021, solicited and sold Salvasen health insurance policies and certificates of coverage to approximately 65,000 consumers nationwide; and (3) in late 2021, Defendants, including Defendant Salvasen Health, disclosed to state insurance regulators that it/they had almost 39,000 active policyholders paying $23.9 million in premiums during 2021. As an active policyholder during this time, Plaintiff unwittingly contributed to the $23.9 million in premiums collected by unlicensed Defendants, including Defendant Salvasen Health.

26
27
28

361.   Defendants intended to cause emotional distress and/or recklessly disregarded the near certainty that such distress would result from their misconduct. Defendants were aware the healthcare coverage provided to Plaintiff in Arizona was an unlicensed service,

collected monthly premiums from Plaintiff for an unlicensed healthcare plan, and disregarded the near certainty that Plaintiff's payment of premiums would not result in payment of claims under the unlicensed healthcare coverage plan.

362.   Plaintiff has suffered severe emotional distress as a result of Defendants' conduct. Plaintiff has incurred $493,838.48 in medical bills for services covered under the healthcare plans sold to her by Defendants.  Defendant Salvasen Health has failed, and refuses, to pay any further claims.  Plaintiff has made arrangements, wherever possible, to make incremental payments on the overdue accounts. Plaintiff experiences extreme, daily emotional stress and financial pressure as a result of these medical bills. Plaintiff is faced with the potential of bankruptcy and foreclosure on her home, causing her severe mental anguish and stress. Plaintiff has suffered lost wages trying to resolve this matter.

363.   Plaintiff has suffered an ascertainable loss as noted above.

364.   Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

365.   As a direct and proximate result of the collective actions of Defendants, Plaintiff has sustained extensive medical payment debt and damage to her personal credit rating. Further, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care, as well as general and special damages. Plaintiff has experienced these damages in the past and will continue experiencing them into the future.

## Count XII

## Negligent Infliction of Emotional Distress

### (All Defendants)

366.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

367.    The actions of Defendants give rise to the claim of negligent infliction of emotional distress.

368.    Defendants knew their marketing, sale, and administration of unlicensed healthcare insurance plans to Plaintiff constituted a breach of their duties to Plaintiff.

369.    Defendants knew, or should have known, that an unlicensed healthcare insurance provider and administrator would not potentially pay claims for covered services under their insurance plans.

370.    Defendants knew, or should have known, in return for payment of her monthly premiums, Plaintiff was relying on Defendants to pay her claims for covered medical services. Defendants knew, or should have known, non-payment of Plaintiff's claims for covered medical services would cause Plaintiff severe emotional distress.

371.    Defendants knew, or should have known, the severe emotional distress caused to Plaintiff by Defendants' non-payment of Plaintiff's claims for covered medical services would create financial stress and burden on Plaintiff, who was relying on such payment, and the added financial stress and burden would result in additional illness, harm and/or damages to Plaintiff.

372.    Plaintiff has suffered lost wages trying to resolve this matter.

373.    Plaintiff has suffered an ascertainable loss as noted above.

374.    Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

375.    As a direct and proximate result of the collective actions of Defendants, Plaintiff has sustained extensive medical payment debt and damage to her personal credit rating. Further, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care, as well as general and special damages. Plaintiff has experienced these damages in the past and will continue experiencing damages into the future.

## Count XIII

## Punitive Damages

### (All Defendants)

376.    Plaintiff incorporates by reference each of the proceeding paragraphs as fully set forth herein.

377.    Defendants' fraudulent representations as an authorized healthcare insurance provider properly licensed to provide healthcare coverage in Arizona constituted a clear and conscious disregard of substantial risks and conduct that might threaten the life, health, and safety of the public, including Plaintiff.

378.    Upon information and belief, Defendants' marketing, sale and/or administration of unlicensed healthcare insurance plans displayed Defendants' clear and conscious disregard of substantial risks, tremendous harm, and conduct that might threaten the life, health, and safety of the public, including Plaintiff.

379.   Such acts and omissions by Defendants exemplified a clear and conscious and outrageous disregard of substantial risks for the safety of the public at large, including Plaintiff.

380.   Defendants knew, or should have known, the marketing, sale, and/or administration of unlicensed healthcare insurance plans, created a substantial risk of significant injury and harm to others, including Plaintiff.

381.   Plaintiff is informed and believes Defendants actions and omissions were part of a plan, scheme, pattern and/or practice of:

(a)   unlawfully allowing and permitting the marketing, sale, and/or administration of unlicensed healthcare insurance plans after Defendants knew, or should have known, such practices were not in compliance with insurance regulations and requirements;

(b)   encouraging and promoting the marketing, sale, and/or administration of unlicensed healthcare insurance plans;

(c)   failing to implement, maintain, and adhere to reasonable and prudent policies, practices, and procedures to prevent the marketing, sale, and/or administration of unlicensed healthcare insurance plans; and

(d)   failing to exercise reasonable and prudent care, control, and vigilance to protect the public from significant, foreseeable risks stemming from the marketing, sale, and/or administration of unlicensed healthcare insurance plans.

382.   Defendants consciously pursued this course of conduct and prioritized their financial interests knowing that doing so created substantial risk of significant harm to patrons and the public, including Plaintiff.

383.   Defendants' collective actions further constituted willful, wanton, reckless, and malicious behavior and/or a conscious disregard of the substantial risk that such conduct might threaten the life, health, and safety of the public, including Plaintiff.

384.   Such acts and omissions by these Defendants exemplified a clear and conscious disregard of substantial risks for the safety of the public at large.

385.   Plaintiff is entitled to an award of punitive damages and exemplary damages based upon Defendants' intentional, willful, knowing, fraudulent, malicious acts, omission, and conduct and their complete and total disregard for the public safety and welfare.

386.   As a direct, proximate, and legal result of Defendants' acts and omissions as described herein, Plaintiff has suffered and will continue to suffer significant medical expenses, severe pain and suffering, mental anguish, loss of enjoyment of life, disability and other losses caused by the lack of coverage for medical services and non-payment of medical service claims.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment:

1.   Awarding declaratory relief;

2.   Declaring that the Defendants have committed the violations of law alleged in this case;

3.   For general, specific, compensatory, incidental, and consequential damages;

4.   Against Defendants in an amount equal to three times the amount of damages;

5.   For disgorgement and restitution of all profits and gains obtained by the unlawful, unfair, and fraudulent acts and omissions alleged herein, and the imposition of a constructive trust upon, or otherwise restricting the proceeds of Defendants' ill-gotten gains, to ensure an effective remedy;

6.   For punitive and exemplary damages;

7.   For pre- and post-judgment interest at the highest rate allowed by law;

8.   For an award of attorneys' fees incurred in this action;

9.      For an award of costs of suit incurred in this action; and

10.     For such other and further relief as the Court may deem proper.

### **<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

DATED this 9th day of November 2023.

**BEUS GILBERT McGRODER PLLC**

By  *<u>/s/ Alex Morris</u>*
            Patrick J. McGroder III
            Caroline McGroder
            Alex Morris
            *Attorneys for Plaintiff*

## <u>**VERIFICATION PURSUANT TO A.R.S. § 13-2314.04(O)**</u>

The undersigned, being first duly sworn upon his oath, deposes and states as follows:

I am counsel for Plaintiff Lynn M. Bunch in this action, have read the foregoing, the verify it is true to the best of my knowledge, information, and belief as it relates to the allegations contained in therein.

1.      It is well grounded.

2.      It is warranted by existing law or there is a good faith argument for the extension, modification, or reversal of existing law.

3.      It is not made for any bad faith, vexatious, wanton, improper or oppressive reason, including to harass, to cause unnecessary delay, to impose a needless increase in the cost of litigation or to force an unjust settlement through the serious character of the averment.

I made this Verification under the penalty of perjury.

DATED:  November 9, 2023              */s/ Alex Morris*
                                      Alex Morris
                                      *Attorney for Plaintiff*